READY
LIBRARY

3   105
98  223

3   105
d112 694

No. 16.—JOHN DOE, *ex dem.,* JANE CARRUTHERS *et al.,* heirs at law of JOSEPH CARRUTHERS, plaintiffs in error, *vs.* RICHARD ROE, casual ejector, and WILLIAM E. BAILEY, tenant in possession, defendant in error.

[1.] The heirs at law of a deceased intestate can maintain an action of ejectment to recover the possession of land, against a mere wrongdoer.

[2.] An administrator of a deceased intestate in this State, can also maintain an action of ejectment, to recover the possession of land for the payment of debts, and to make distribution thereof in the manner pointed out by the statute.

Ejectment.   Tried before Judge WARREN.   In Baker Superior Court.   June Term, 1847.

The declaration in this case, contained a demise from the plaintiffs in error, as heirs at law of Joseph Carruthers, to John Doe. The defendant demurred, on the ground that the heirs at law could not, in this State, maintain an action of ejectment.

. The Court below sustained the demurrer and nonsuited the case, and the plaintiffs excepted.

E. WARREN and E. R. BROWN for the plaintiffs, insisted,

1st.  By the common law, the heir was the only proper person to sue for real estate on the death of the ancestor intestate.

2d.  The right of the heir to sue had not been destroyed by any statute of Georgia.  All the acts passed on the subject were in relation to inheritance and distribution.   The first act, passed 29th February, 1764, directs the administrator to produce to the appraisers " *the goods and chattels*" only.   The act charges the administrator " *with the real value of the goods and chattels in the said inventory contained.*"   The appraisers are required to appraise nothing but " *the goods and chattels.*"   By the act of December 18th, 1792, the administrator is required to take an oath to administer " *the goods and chattels, rights and credits*" of the intestate ; also to give bond and security to administer on " *the goods, chattels and credits*" only.   They argued that these acts had relation to the personalty only, and contended that there was no other act in any manner altering or repealing them.

3d.  The statute of 12th December, 1804, and the amendatory act of 25th December, 1821, was intended to repeal the law of primogeniture, which casts the whole real estate on the eldest male heir, whilst, at the same time, the personalty was equally divided between all the children.  These two statutes were passed to make the real and personal estate of the same nature, and to put them on the same footing " *as to distribution,*" but not as to administration, for the plain reason that they do not so declare it, and do not conflict with those already passed.  These two last acts, and the act of December 10th, 1812, in relation to the manner in which courts of ordinary shall cause a division of the estate amongst the distributees, do not in any respect vest the title in the administrator, nor pass it out of the administrator into the

Carruthers *vs.* Bailey.

heir. Title to real estate can only be conveyed by *deed;* title to personal property may be changed by *delivery.* 5 *Wheeler Amer. Com. Law,* 317. There being no authority given by law for the administrator to make a *deed* to the heirs of his intestate *eo nomine,* the title, if vested in him, could never pass out of him.

4th. If the legislature had intended to vest the title in the administrator, why was it not so declared by some of the acts passed upon this subject of intestate's estates? By the act of 1827, in relation to the husband's right to administer on his deceased wife's estate it was necessary to perfect his title, by allowing him to administer on her estate, both real and personal, &c.; therefore the statute authorized him to administer " *on the rights and credits, and other real and personal estate,*" of his wife deceased intestate.

5th. As a further proof that the legislature did not intend to divest the heirs at law, by the act of 6th December, 1805, 7th and 8th secs., title is directed to be made " *to the heirs general*" of the deceased, where the vendee died after purchase and before title made; and also in like manner to the heirs of deceased, when the vendee and vendor both die, before title made according to contract.

6th. Title to real estate does not remain in *abeyance,* but is cast immediately on the heir at the death of the ancestor. *Leach* vs. *Cooper, Cooke,* 249.

7th. The act 18th December, 1811, authorizing the court of ordinary to order the sale of *real estate* by the administrator, does not vest the title in him, nor divest it out of the heirs, till the sale. The order of the court is in the nature of a power of attorney to the administrator. By the same act the court may direct the guardian also to sell his ward's estate, when it is clear that the legislature never intended to divest the paramount title out of the ward. The guardian has only a supervisory power over his ward's estate.

It has been decided by nearly all the States, that the authority given to the administrator to sell, does not thereby vest the title in him. The counsel then referred to the following authorities: *Drinkwater* vs. *Drinkwater,* 4 *Mass. R.* 354; *Johnson* vs. *Haines,* 4 *Dall.* 64; *Stearns* vs. *Stearns,* 1 *Pick. R.* 157; *Bank of Hamilton* vs. *Dudley,* 2 *Peters R.* 492; *Watkins* vs. *Holcomb,* 16 *Peters R.* 25; *Hubbard* vs. *Ricart,* 3 *Verm. R.* 207; *Foster* vs. *Gorton,* 5 *Pick. R.* 185; *Allen* vs. *Carter,* 8 *Id.* 175; *Covell* vs. *Westen,* 20 *John. R.* 414; *Malcolm* vs. *Rogers,* 5 *Cow. R.* 188; *Pennington*

vs. *Ogden, Coxe R.* 192; *Adams* vs. *Adams,* 4 *Watts R.* 160; *Scott* vs. *Bealle, A. K. Marsh. R.* 60; *Carothers* vs. *Dunning,* 3 *Sergt. & R.* 373; *Vincent* vs. *Huff,* 8 *Id.* 381; *Wyman* vs. *Campbell,* 6 *Porter R.* 219.

JOHN B. HINES and JOHN BILBO, for the defendant, made the following points:

1st. That in Georgia, under our system of intestacy, an administrator can and ought to sue, the real estate being vested in him, subject to the order of the court of ordinary, and no title in the heir at law till after distribution. *Cobb's Analysis, title, Exors. & Admrs.,* 2 *John. R.*; 1 *Kelly R.* 371, 378, 540; 3 *Con.* 300.

2d. That whenever an administrator can sue he must do so, and the right to sue cannot be, at the same time, both in the administrator and the heir at law. 4 *John. R.* 72; 1 *Chitty Plead.* 17.

*By the Court.*—WARNER, J., delivering the opinion.

It appears from the record in this case, that an action of ejectment was instituted in the court below, for the recovery of the possession of lot of land number 254, in the third district of, originally, Early County, now Baker.

The plaintiff alleges a demise, in his declaration, from the heirs at law of Joseph Carruthers; and to this declaration there was a demurrer, on the ground, that the heirs at law of a decedent could not maintain the action of ejectment in this State. The court below sustained the demurrer and nonsuited the plaintiff, to which decision the plaintiff excepted, and now assigns the same for error in this Court.

[ 1. ] The question presented for our adjudication is, can the *heirs at law* of a deceased intestate, institute and maintain the action of ejectment for the recovery of land of which their ancestor died seised and possessed ?

In England, by the common law, on the death of the ancestor, his lands descend to his *heir.* We are not aware that this common law rule of descent has been altered by our State legislation, except so far as to cast the title of the ancestor on the *heirs general,* as provided by our statute of distributions. On the death of the ancestor in this State, intestate, his lands descend to his heirs at law, as pointed out by the act of 1804. *Prince,* 233.

It is contended, however, that it was the intention of the legis-

lature, by the act of 1804, to place both real and personal property on the same footing, and that as the title to personal property vested in the administrator by the common law, so by the terms and provisions of the act of 1804, the title to the real estate vested in him also, and he alone can maintain ejectment and not the heirs. The first section of the act of 1804 declares, " When any person holding real or personal estate shall depart this life intestate, the said estate, real and personal, shall be considered as altogether of the same nature and upon the same footing, so that in case of there being a widow and child, or children, they shall draw equal shares thereof, &c." . The act, it is true, does not state in so many words, that real and personal property shall be considered as altogether of the same nature and upon the same footing, as to · *distribution;* but the statute proceeds to declare in what manner the same shall be distributed. The act of 25th December, 1821, however, removes all doubts on this subject; that act declares, " When any person holding real or personal estate shall depart this life intestate, the said estate, both real and personal, shall be considered altogether of the *same nature and upon the same footing as to distribution,* which shall take place agreeably to the provisions of the before recited act," referring to the act of 1804, of which the act of 1821 was amendatory.

By the common law, as it existed in 1776, the title to the lands of the ancestor descended to his heir, in England, on his death ; and this common law rule has not been changed in this State, only so far as to abolish the right of primogeniture, and declare *who shall be the heirs of the ancestor,* and to authorize them to inherit *equally.* The *law of descents* has not been altered, but the *persons* who are to take under that law have been changed by our statute. The legislature of Georgia have not said, the lands of the ancestor, on his death, shall *not descend to his heir ;* but they have said, the lands of the ancestor, on his death, *shall be distributed to all his heirs in equal degree.* The *title* of the ancestor to his lands, is, on his death, in our judgment, cast upon his *heirs,* and does not vest in his administrator, as was erroneously supposed by the counsel for the defendant in error. The title to the lands of the ancestor, on his death, vests in his heirs, subject to the debts of the ancestor, and liable to be sold, as we shall presently show, by his administrator, for the payment of his debts; but the heirs have such a title as will enable them to recover the possession of the land, as against a stranger, or a *mere wrong-*

*doer.* As has been already stated, by the common law the lands of the ancestor descended to the heir, and consequently did not vest in his administrator, and he had nothing to do with the distribution of them. The title to the personal property, however, of the deceased intestate ancestor, did vest in the administrator, and by the statute 22d and 23d Charles II., commonly called the statute of distributions, he is compelled to make equal distribution thereof to the next of kindred to the deceased, after payment of debts and all just expenses. So it will be perceived, that by the common law, the real and personal estate of the deceased ancestor, was not placed on the same footing *as to distribution.* The legislature of this State have placed both estates on the same footing, as it regards the *distribution* thereof; and to this extent only have they altered the common law. By our law, after the debts are paid, and all just expenses of administration, the estate of the deceased ancestor, both *real* and *personal,* is to be equally distributed to his heirs; whereas, by the common law, the administrator only distributed the *personal* estate. In *Doe ex dem. of Cofer, admr.,* vs. *Flanagan,* 1 *Kelly Rep.* 538, we held, that an administrator could maintain the action of ejectment. The question, as to whether the heirs could maintain the action, was not presented for the judgment of the court, by the record, in that case. It has been urged, however, in the argument of this case, that both the administrator and the heirs, cannot maintain the action.

[2.] We are of the opinion that the heirs may maintain the action, as having the title, against a wrongdoer, and that the administrator may also maintain it, to enable him to perform the duties enjoined upon him by the law.

The title of the heirs is subservient to the right of the administrator to have the possession of the land, to enable him to pay the debts of the ancestor, and to make distribution thereof to the heirs, as required by the act of 1812. *Prince* 241. Although the title to the land is not in the administrator, yet he is the agent of the law to sell it, if necessary, for the payment of debts; and when he obtains the order of the court of ordinary for that purpose, and does so sell it in pursuance of the law, the title of the heirs is divested, and the administrator is made the legal agent to convey the title to the purchaser. The title, on the death of the ancestor, vests in the heirs, subject to be divested by the sale of the administrator under the order of the court of

ordinary, for the payment of the ancestor's debts; and, to perform this duty, the administrator is entitled to the possession of the land, as against a *wrongdoer*, and even as against the heirs themselves. To enable the administrator to recover the possession of the land, as against the heirs, an order of the court of ordinary, authorizing the administrator to sell it for the payment of debts, would, in our judgment, be necessary. Nor are we prepared to say, where there are several heirs, and one of them should have the *exclusive* possession of the lands of the ancestor, but that the administrator would be entitled to recover the possession from that one, for the purpose of making an *equal* distribution of the land to all the heirs, as provided by the act of 1812.

We are aware that, in practice, that act has generally been supposed to apply to personal property, negroes in particular; but the terms of the act comprehend land as well as negroes. The act declares, " The courts of ordinary, upon application made by any administrator, administratrix, guardian, or distributee of *any estates,* shall appoint three or more freeholders to divide such estate, &c."

We are of the opinion, that on the death of the ancestor intestate, the title to his land is cast upon his heirs at law, subject to the payment of the debts of the intestate, and subject to be distributed in the same manner as personal property; and that the heirs have such a title as will enable them to maintain ejectment to recover the possession of the land against a *mere wrongdoer.*

We are also of the opinion, that inasmuch as it is made the duty of the administrator by law, to collect the assets of the intestate for the payment of his debts, and then to make distribution thereof to the heirs at law, and the land of the intestate being assets for the payment of debts, and subject to distribution as personal property, that the administrator can maintain the action of ejectment also, to recover the possession of the land, so as to enable him, as the agent of the law, to perform the duties enjoined upon him by the law, and for that purpose only.

Let the judgment of the Court below be reversed and the cause reinstated.

Judgment reversed.