No. 28.—JOHN GOODTITLE *ex dem.* ELIZABETH BOND *et al.* plaintiffs in error, *vs.* RICHARD ROE, cas. eject. and JAMES WATSON, tenant, defendants in error.

[1.] If lessor of plaintiff be dead at the date of the demise, plaintiff cannot recover on that demise in ejectment.

[2.] No recovery can be had on a demise from a party who had no title at the commencement of the suit, nor on a demise from an administrator whose letters of administration are void for the want of jurisdiction in the Court which granted them.

[3.] If the verdict of the Jury be contrary to evidence, a new trial will be granted.

[4.] The Court is not bound to exclude evidence not objected to. The party or his Counsel being before the Court, will be considered as waiving objections not taken.

[5.] If the party or his Counsel except to the admission of evidence on specified grounds, they will be considered as waiving grounds not specified.

[6.] If the record shows that objection was made, but does not disclose either· the ground, or that there was no ground specified, it will be presumed that the objection was made on grounds on which the testimony ought to have been rejected, if such ground appears in the record.

[7.] Administrators may recover land from one of the heirs at law, even though there be no order for sale.

[8.] A purchaser from an heir at law, is in no better position than the heir from whom he purchased.

[9.] An administration will not be presumed to support the title of an acknowledged trespasser.

Ejectment, in Baker Superior Court. Decided by Judge ALLEN, May Term, 1856.

This was an action brought to recover lot of land No. 143, in the 9th district of originally Early, now Baker County. There were five demises laid in the declaration, in the names of the following parties, respectively: Elizabeth Bond, Gaines Thompson, Eppy W. Bond, James Patillo and Eppy W. Bond, administrator of Elizabeth Bond, deceased—the demise in the latter having been, by amendment, made in November, 1854. The defendant, James Watson, was served on the 21st of May, 1851, the suit being returnable to the June

Term, 1851, of said Court. The case came on for trial on the appeal at May Term, 1856, when plaintiff introduced the following evidence :

1st. A grant from the State of Georgia to Elizabeth Bond, of Elbert County, for lot 143, in the 9th district of Early County.

2d. An exemplification of the proof and record in the Court of Ordinary of Elbert County, of a will made by Elizabeth Bond, dated September 10th, 1823, bequeathing one dollar each to her sons, Joseph B. and Nathan Bond; and to the heirs of her daughter, Mary Hilly, lot of land in Houston County; and all her stock of horses, cattle and hogs, and her houshold and kitchen furniture, plantation tools, &c. to her son, Richard C. Bond—her just debts being first paid— and appointing William Bond and Gaines Thompson, executors. The will was attested by but two witnesses, and was admitted to record on the 12th day of January, 1824.

3d. An order of the Court of Ordinary of Elbert County, passed March 3d, 1851, appointing Eppy W. Bond, administrator of Elizabeth Bond, deceased, to administer the real estate of said deceased; and also, the letters of administration issued to him in pursuance thereof, bearing same date.

4th. An order of the said Court of Ordinary, passed September 1st, 1851, authorizing said administrator to sell all the lands belonging to the estate of the said deceased.

5th. A deed from said administrator to James Patillo, conveying the premises in dispute, bearing date the 4th day of May, 1852.

6th. WILLIAM H. GRIFFIN being introduced, testified, that James Watson was in possession of the lot sued for at the commencement of the suit; that he had known the lot for 12 years; it was first improved by Thigpen, and afterwards by others; Watson came in after Acre. The lot had been in the continuous possession of Thigpen and those holding under him, down to the present time; witness was in possession in 1845 under one of the former holders, without any claim of title.

7th. LEONARD S. ACRE testified, that whilst he was in possession, Patillo tried to purchase the lot from him ; he, however,. sold to Jacob Watson, and so informed Patillo of such. sale before the latter purchased at administrator's sale ;. told Patillo and Watson, also, that he did not claim title to. the lot; the improvements made by Watson were worth the rent.

Plaintiff closed, and the following testimony was introduced; by the defense :

1st. A quit claim deed from Leonard S. Acre to Jacob, Watson, dated July 9th, 1850.

2d. A deed from Nathan Bond to Jacob Watson, dated August 16th, 1853, conveying lot No. 143. Plaintiff objec-. ted to the introduction of this deed, but the objection was over-ruled.

3d. A deed from Gabriel Bond to Jacob Watson, convey-. ing the premises in dispute, dated August 12th, 1855.

4th. A deed from Joseph Bond to Jacob Watson, to the lot in dispute, dated August 15th, 1853.

(Plaintiff objected to the introduction of all these deeds.)

5th. Francis Hilly's answers to interrogatories were introduced. He states that he knew Elizabeth Bond the 30 years next preceding her death, which occurred, to the best of his recollection, in 1824 or 1825 ; she lived, most of the time, in Elbert County ; but about a year before her death, she removed to Franklin County, where she died ; she drew a lot of land, but he does not know in what county it lies; thinks it lies some where in the lower part of Georgia; she left no estate except said lot and some little stock, furniture, &c. Eppy W. Bond, her great grand-son, administered on her estate ; she was witness' grand-mother.

6th. In answer to other interrogatories, the same witness testifies, that he thinks Elizabeth Bond died in 1822 or 1823; that he knows Nathan Bond and Gabriel Bond, or knew persons by that name, who were grand-sons of said Elizabeth Bond ; does not know Joseph B. Bond ; that Elizabeth Bond had four children, all of whom have children now living.

7th. In answer to interrogatories, David Grie testifies, that he knew Elizabeth Bond; as well as he remembers, she left Elbert County in the fall of 1823, and removed to Franklin County, Georgia, where she lived two or three months with her son Richard; that she died in Franklin County; and witness, after her death, moved her remains back to Elbert County—she having, on her death bed, requested him to do so.

(Plaintiff objected to the testimony of both these witnesses.)

Defendant closed, and the Jury found a verdict for the plaintiff for the premises in dispute.

Counsel for defendant moved for a new trial, on the following grounds:

1st. Because the Jury found contrary to evidence and the weight of evidence.

2d. The Jury found contrary to law.

3d. The Jury found contrary to law and evidence.

4th. Because the Jury found contrary to the charge of the Court, in this: that the Court charged the Jury, that if they should believe from the evidence that Elizabeth Bond resided in Franklin County at the time of her death, the administration granted to Eppy W. Bond was void, and the Jury should find for defendant.

5th. Because the Jury found contrary to the charge of the Court, in this: that if the Jury should believe that the order authorizing said administrator to sell said land, was granted after the commencement of this suit, plaintiff could not recover, even though the administration in Elbert County was legal and valid; and in this: that plaintiff could not recover on the demise from Patillo, if the deed from said administrator was made after this suit was brought.

6th. Because the verdict was contrary to the charge of the Court, in this: that the Court charged that if defendant had bought of any of the heirs of Elizabeth Bond, plaintiff could not recover, unless it was to pay debts or make distribution; and if defendant was in possession, he had a right to purchase of said heirs to protect his previously acquired possession;

Goodtitle, &c. vs. Roe, &c.

and in a suit between the administrator and the heirs, the administrator cannot recover against the heirs without showing, specially, that the recovery is necessary for the payment of debts or distribution ; and that defendant has the same rights of the heirs who have conveyed to him.

7th. Because the Court refused to charge as requested in writing; that from the evidence, the Jury may presume a former administration on said estate if they see proper ; and upon said presumption, find for defendant.

8th. Because the Court erred in admitting the deed from the administrator, Eppy W. Bond, to Patillo, when objected to by defendant.

The Court ordered a new trial in said case, sustaining the motion on all the grounds taken.

Counsel for plaintiff excepted, and now assigns the ruling of the Court, granting a new trial, as error.

STROZIER & SLAUGHTER, for plaintiff in error.

WARREN & WARREN, for defendants in error.

*By the Court.*—McDONALD, J. delivering the opinion.

The Court was right in granting a new trial in this case. The verdict was manifestly contrary to evidence.

[1.] On no one of the five demises laid in the declaration ought the Jury to have found a verdict in favor of the plaintiff. Elizabeth Bond had been dead for nearly thirty years, at the date of the demise from her; no title was offered to sustain the demises from either Gaines Thompson or Eppy W. Bond.

[2.] The deed to James Patillo showed that he had no title at the commencement of the suit : and the evidence is plain, that the Court of Ordinary of Elbert County had no jurisdiction to grant letters of administration on the real estate of his intestate, she having been a resident of Franklin County at the time of her death. The copy will is evidence that she resided in Elbert County at the time the will was made ; (and

it is not conclusive of that;) but it is no evidence that she resided in that county at the time of her death. The proof is all the other way, on that point, to-wit: that at that time, she resided in the County of Franklin, and overcomes the unquestionable legal presumption of jurisdiction which always arises upon the act of the Ordinary, standing alone.

[3.] If the verdict of the Jury was predicated on the title of Patillo, derived through the administrator, or on the title of the administrator, Eppy W. Bond, it was contrary to the evidence, on the point of jurisdiction of the Court of Ordinary of Elbert County, and against the charge of the Court, as stated in the fourth ground of the motion for a new trial, there being no ground, whatever, for a finding for the plaintiff on any of the other demises.

[4.] The Court is not bound to exclude evidence, though inadmissible, unless objected to, and the grounds of exception are stated. The party or his Counsel being before the Court, may be considered as waiving objections, if he fails or refuses to specify them; but if evidence clearly inadmissible, and objected to when offered, is admitted, it is error, unless the particular objection made be such as ought not to be sustained, and the sustainable objection is not made.

[5.] If the party or his Counsel except to the admission of evidence on specified grounds, he must be presumed to have waived all others.

[6.] If the record shows that exception was taken, but does not disclose either the ground, or that there was no ground specified, and the Court admits the testimony, it will be presumed, here, that the objection was made on proper grounds, and the question will be considered as though the ground had been taken, on which it appears in the record, the evidence ought to have been rejected. The deed to Patillo ought not to have been received in evidence, under the Act of 1802. It was objected to, but the ground of objection does not appear in the record. But the record shows that no title accrued to him until long after suit was brought, and that it was inadmissible to support a demise alleged to have been

made before the suit was brought; and that under the allegations of the declaration, the plaintiff could not *claim* title to the premises in that action, under a demise from Patillo, founded on that deed.

The Court below sustained the motion for a new trial on all the grounds taken by defendant in error. Although the judgment of the Court must be affirmed, because a new trial ought to have been granted on the grounds already considered, still, we think the decision, in some of its parts, was erroneous.

[7.] If the administration granted in Elbert County had been legal and valid, the plaintiff ought, unquestionably, to have recovered on the demise from the administrator. The intestate owned no unadministered property but the land sued for, and that was to be distributed amongst the heirs at law. Executors and administrators may sell land by order of the Court, when it is for the benefit of the heirs and creditors; and it is always manifestly for the benefit of heirs, where there are many distributees, that a sale should be made for distribution and the proceeds divided, rather than that the land, itself, should be partitioned into small parcels, allotting a part to each of numerous heirs. Under such circumstances, an heir, or a person claiming under an heir in possession, is no more to be regarded than a stranger. *Carruthers vs. Bailey,* (3 *Ga. Rep.* 111.) In such a case, the administrator may recover before an order to sell, and independent of an order. His right does not depend on the order.

[8.] The defendant had purchased an estate in the land of some of the heirs, but not from all. These purchases were all made after the suit was commenced. He did not enter under them. His entry was under a trespasser. He was, himself, a trespasser, and worse, for knowing that Acre was a trespasser and did not claim title, he purchased and got a quit claim deed to build up a title against the rightful owner. The administrator represented the interest of all the heirs at law, and no one of them had the right of exclusive possession. A trespasser going into possession under a known fraudulent

title, got no better title by his purchase from the heirs at law than those heirs had. The administrator has the power of sale under the authority of the Ordinary, and is entitled to the possession; and the case now under consideration presents a strong instance, not only of the benefit to the heirs of a sale, but also of the necessity of having the possession to make an advantageous sale. To sell advantageously, the vendor must have the power to deliver the possession. To enable him to do this, he must have the entire possession; and an heir has no right to enter into the possession and hold it against the administrator, to the injury of his co-heirs; and a purchaser from heirs cannot be in a better position.

[9.] The facts of this case do not authorize the charge as requested, that the Jury, if they saw proper, might infer a former administration upon the estate, and upon that, find for the defendant. There never had been a possession of the premises under a claim of right. The defendant had no right to claim any benefit from an administration, if one had been presumed or had been proven to have existed; for the origin of his title was too recent and notorious to be purified or strengthened by legal presumptions.

Judgment affirmed.