## 8832.  McKEE *v.* HURST & COMPANY.

1. "The general rule is, that in order for the exclusion of oral evidence to be considered as a ground for a new trial, it must appear that a pertinent question was asked, that the court refused to allow the answer, and that a statement was made to the court at the time, showing what the answer would be; and that such testimony was material and would have benefited the complaining party." *Allen* v. *Kessler,* 120 *Ga.* 319 (47 S. E. 900). "Even if the objection of the opposite party was insufficient, this would not relieve the counsel who propounded the question from the duty of informing the court as to the nature of the answer expected." *McAllister* v. *State,* 7 *Ga. App.* 541 (4) (67 S. E. 221). "Questions may be answered so that the testimony will benefit the party propounding them, or so that it will benefit the adverse party, or so as to show entire want of knowledge on the part of the witness. Reversals are granted for material errors, calculated to injure the party complaining." *Tillman* v. *Bomar,* 134 *Ga.* 660 (68 S. E. 504). See also *Artesian Lithia Water Co.* v. *Central Bank & Trust Corporation,* 138 *Ga.* 618 (75 S. E. 646); *Hope* v. *Hedgerose Heights Co.,* 19 *Ga. App.* 10 (2) (90 S. E. 731); *Cooner* v. *State,* 16 *Ga. App.* 539 (85 S. E. 688); *International Life Ins. Co.* v. *Nix,* 11 *Ga. App.* 664 (10) (75 S. E. 1058). In view of the rulings stated above, grounds 1, 4, 5, and 6 of the amendment to the motion for a new trial present no question for determination by this court.

2. Although a motion for a new trial may assign reasons why evidence is inadmissible, this court can not consider such grounds unless it appears that the same reasons were urged before the trial judge at the time the evidence was offered. *Georgia Railroad* v. *Daniel,* 135 *Ga.* 108 (2) (68 S. E. 1024); *Johnson* v. *Ware,* 135 *Ga.* 365 (69 S. E. 481); *Wynne* v. *State,* 123 *Ga.* 566 (51 S. E. 636); *Pool* v. *Warren Co.,* 123 *Ga.* 205 (3), 207 (51 S. E. 328); *Powell* v. *Georgia, Fla. & Ala. Ry.,* 121 *Ga.* 803 (49 S. E. 759); *Andrews* v. *State,* 118 *Ga.* 1, 3 (43 S. E. 852); *Frey* v. *Macon Sash &c. Co.,* 112 *Ga.* 242 (2), 244 (37 S. E. 376); *Wilkinson* v. *State,* 18 *Ga. App.* 330 (89 S. E. 460); *Soell* v. *State,* 4 *Ga. App.* 337 (61 S. E. 514).

3. The court did not err in directing a verdict for the plaintiffs.

DECIDED JANUARY 21, 1918.

Complaint; from city court of Greenville—Judge Revill.  April 13, 1917.

*McLaughlin & Jones,* for plaintiff in error.

*John R. L. Smith, N. F. Culpepper,* contra.

BLOODWORTH, J.  1, 2.  The first and second headnotes need no elaboration.

3.  W. A. McKee was indebted to John E. Hurst & Co. on an account which was closed by note signed by W. A. McKee and his father, J. W. McKee, due April 15, 1913.  This note was not paid, and on April 26, 1913, in renewal and extension thereof,

four new notes were given, one for $679, due September 15th, one for $675.62, due October 15th, two each for $676, due respectively November 15th and December 15th. These notes were signed by W. A. McKee and J. W. McKee. Suit on these notes was brought against J. W. McKee only, W. A. McKee having been discharged in bankruptcy after the making of the notes. The defendant filed a plea in which he admitted a prima facie case, but further pleaded that he signed the original note on the express condition that Hurst & Co. would extend to W. A. McKee an additional credit of $1,000 for which he was not to be liable, this additional credit to be given to enable W. A. McKee "to get a start in Tampa, Florida," to which point he expected to move from Cordele, Ga. The plea alleged also: "It was agreed by and between the plaintiff and W. A. McKee, the principal and this defendant, that said note for $2,589.13, due April 15, 1913, should be renewed when due, from time to time, to enable the said W. A. McKee, to get a better foothold and pay the additional amount for goods to be purchased. Defendant, relying upon the contract so made and agreed upon in good faith by the defendant, gave the matter no further consideration, believing that the contract was being carried out as made and entered into, when he [was] requested, renewed the original note as aforesaid by signing as surety the notes sued on in this case. This defendant further answering says, that it was months after the notes sued on were signed and delivered that this defendant learned that the plaintiff had failed and refused to comply with the said contract and failed and refused to ship the goods bought from plaintiff by W. A. McKee, the principal on said notes, after the salesman of plaintiff had taken the order for the goods in pursuance of the contract, which was the consideration of the original note and the notes sued on. This defendant would not have signed the original note as aforesaid, as security for W. A. McKee, had it not been for the consideration of the additional credit to be extended to W. A. McKee and which fact was well known to plaintiff, that the additional credit to be extended by plaintiff to W. A. McKee was the sole consideration moving defendant to sign said note as security as aforesaid. That this defendant would not have signed the notes sued on, if he had even suspected that the consideration of the first note had not been complied with, defendant presuming that the contract made as aforesaid by plaintiff with

W. A. McKee and this defendant was in good faith and had been complied with. This defendant now believes and charges that the contract made by plaintiff with W. A. McKee and this defendant was a scheme on the part of plaintiff to fraudulently obtain this to sign as security with W. A. McKee, that said plaintiff never intended to comply with his said contract, though he had his salesman to call upon said W. A. McKee and took his order as per said contract, but declined and refused to ship the goods after the order was taken. This defendant further answering says, that other creditors of W. A. McKee, who had knowledge of the agreement made and entered into by W. A. McKee and the plaintiff in this case, learning that the said plaintiff had declined and refused to comply with his said contract, they also refused and declined to sell W. A. McKee, and by reason of the conduct as aforesaid of the plaintiff in refusing to comply with his said contract, the said W. A. McKee was forced to go into bankruptcy, and did go into bankruptcy, increasing the risk of this defendant on these notes, all of which was caused by the failure of said plaintiff to carry out his said contract, made as aforesaid, same being the consideration of the note sued on. This defendant charges that by reason of the failure of the said plaintiff to carry out his contract made as aforesaid in good faith was the direct cause of the said W. A. McKee's failure to meet the original note when due, or at some other time ere this, thereby increasing the risk of this defendant as security on the note sued on; that this defendant signed the original note as surety, as well as the note sued on, the consideration being as above set forth, which failed, thereby releasing this defendant from any obligations of said note."

The evidence is conflicting as to the agreement, made when the original note was signed, as to the terms on which additional credit was to be extended; but, granting that the defendant could prove all that he alleges in his plea and that the same would be a good defense to the first note, would these facts be a legal defense to a suit on the renewal notes? We think not. It appears undisputed that after the original note fell due and remained unpaid, W. A. McKee appealed to Hurst & Co. for more time,—an extension of the note,—which was granted, and four notes were sent to W. A. McKee for the signature of himself and his father. Plaintiffs had nothing whatever to do with the signing of these renewal

notes by J. W. McKee, further than to prepare them and send to W. A. McKee. They made no statement or representation to J. W. McKee, and did not even request him to sign these notes. When the request for extension of time came from W. A. McKee the notes were sent to him, he signed them, and secured his father's signature, and the notes were returned to Hurst & Co. If any fraud or wrong was perpetrated upon defendant in the signing of these notes it was by his son, and not by plaintiffs. Their rights could not be affected by anything the son did or said to induce the father to sign the notes. "A debtor is not the agent of his creditor in procuring security, though the creditor designate the very security required, and furnish to the debtor the instrument of writing which he demands to be executed by third persons as a condition precedent to granting indulgence on the debt." *Campbell* v. *Murray*, 62 *Ga.* 86 (4). "Acts of the principal debtor or of any other person than the creditor himself by which one is induced to become a surety do not affect the rights of the creditor, even though the acts be fraudulent. Rights of the creditor are not affected by conditions of agreements which may influence one to become a surety for the principal debtor." *Broughton* v. *Joseph Lazarus Co.,* 13 *Ga. App.* 153 (2) (78 S. E. 1024).

W. A. McKee, the principal debtor, knew all of these facts, admitted his liability, asked for an extension of time from spring to fall, obtained it, signed the notes, and is bound thereby; and his father will not be relieved from liability because he "would not have signed the notes sued on if he had even suspected that the consideration of the first note had not been complied with, defendant presuming that the contract made as aforesaid by plaintiff with W. A. McKee and this defendant was in good faith and had been complied with." Parties signing notes who do not wish to be bound thereby can not act on mere presumptions. They can not take advantage of their own negligence. By giving the renewal notes, voluntarily so far as plaintiff knew, and thus securing an extension of the time of payment,—a thing of value,—the failure of consideration, if any there was, was waived, and both defendants are liable. The principle just announced seems settled by the decisions of our courts of last resort. In *American Car Co.* v. *Atlanta Street Ry. Co.,* 100 *Ga.* 254 (28 S. E. 40), it was held: "When a promissory note payable at a future day, signed by the

purchaser of personal property as principal and by other persons as sureties, was given for a balance due upon the contract of purchase, and at or about the time of maturity of such note the principal with the same sureties and one other renewed the original note, the principal then having full and complete knowledge of certain defects in the property, which knowledge had been acquired after ample opportunity for observing and ascertaining the character and condition of the property, neither such principal nor the sureties upon the second note could defeat a recovery in an action thereon, by setting up the defense of 'failure of-consideration' based upon the existence of such defects; especially is this so when such principal after the giving of the second note repeatedly in writing acknowledged liability thereon and promised to pay the same." In *Harder* v. *Carter,* 97 *Ga.* 273 (23 S. E. 82), the decision was as follows: "Even if the machinery for the agreed price of which the action was brought was in fact defective and worthless, yet as the defendant, after the most complete and ample opportunities for trying and testing it, and with full knowledge of its character, deliberately promised in writing to pay for it, she could not thereafter set up in resistance of such action the defense of failure of consideration predicated upon alleged defectiveness or worthlessness of the machinery." To the same effect are the decisions in the cases of *Edison Electric Co.* v. *Blount,* 96 *Ga.* 272 (23 S. E. 306); *Tuttle* v. *Stovall,* 134 *Ga.* 325 (67 S. E. 806, 20 Ann. Cas. 168); *Unitype Co.* v. *Skelton,* 11 *Ga. App.* 742 (76 S. E. 80). "Where a note is executed in renewal of a previous note, from which the sureties have been released, and the sureties signed the renewal note uninfluenced by fraud or deceit, they are bound by it, as there is a sufficient consideration." Davis v. Bank of Clarkston, 144 Ky. 417 (138 S. W. 246). See also N. H. Savings Bank v. Colcord, 15 N. H. 119 (41 Am. D. 685); Steger v. Jackson, 139 Ky. 491 (102 S. W. 329).

The defendant admitted a prima facie case, and, although he filed additional pleas, the evidence and all reasonable deductions and inferences therefrom demanded a verdict for the plaintiff, and the court did not err in so directing

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*