No. 76.—JOHN M. BURTINE, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] Though a witness be examined irregularly by the Solicitor General; yet, if no objection be made at the time, but the opposite party permit the examination to proceed, it may be presumed that the irregularity was waived; and if no interposition, on the part of the Court, is invoked, and no opinion on the point expressed by the Court, there has been no decision, sentence, judgment or decree for the revision or determination of this Court.

[2.] It is not only the right, but the duty of the Judge, to revise and correct the brief of testimony, in all cases where it is required to be filed.

[3.] Although it is loose, and highly irregular and improper, for any portion

of a Jury, after being sworn in a cause, to enter a retail grocery, and there to converse with various persons; yet, where it appears that they were accompanied by the Bailiff; that he heard all that was said; that they did not converse about the case; and especially, where it is shown that the prisoner, himself, was present, and no injury resulted to him from the conduct of the Jury, the Court will not interfere with the verdict.

Murder, in Lee Superior Court.    Tried before Judge WOR-RELL, March Term, 1855.

When the prisoner was arraigned and put upon trial, he moved a continuance, on the ground that the evidence taken down before the committing Magistrate, was not in Court. The motion was refused, and prisoner excepted.

Thomas Marsh, a Juror, said he had been absent from the country from July to December, but his father lived in Lee County, and he considered that his home; that he considered himself at home wherever he was. The Court held him competent, and defendant excepted.

After the prisoner's challenges were exhausted, Elijah Tucker, being put on triors, stated that he had formed and expressed a decided opinion as to the guilt of prisoner. To questions put by the State's Counsel, he said that his opinion of the guilt of the prisoner was not so fixed but that it could be removed by the evidence; and that he thought he would be controlled by the evidence rather than by his preconceived opinions. The Court held him competent, and defendant excepted.

After one of the witnesses had testified, the Solicitor General moved that his testimony, as taken down, be read over to him. The Court refused the motion, and defendant excepted.

Subsequently, on a motion for a new trial being made, the Court ordered the testimony of this witness to be corrected according to the recollection of the Court. To this proceeding defendant excepted.

The deceased (Spence) stated to a witness, after he was wounded, that Burtine beat and about ruined him. He spoke

like a drunken man; told them to go away and let him alone. To this being admitted in evidence, defendant objected; and being over-ruled, excepted.

Counsel for defendant requested the Court to charge, "that if they believed the deceased, at the time the injuries were inflicted on him, was in such a situation as would have rendered him an incompetent witness, if on the stand, then his declarations, made *in extremis*, were not entitled to credit. And farther, that though the competency of the dying declarations was decided by the Court, their credibility was to be judged of by the Jury." The Court declined so to charge, but certified that he had previously told the Jury they were to judge of the credibility of these declarations. Defendant excepted.

A motion was made for a new trial, on all the preceding points; and also on the ground, that when three of the Jurors had been selected, one of them, John Ross, separated himself from the others and from the Bailiff, went into a grocery and drank liquor, and conversed and danced with the by-standers; that another Juror, Caleb Parker, also conversed with persons, not of the Jury, after he was sworn.

This ground was supported by sundry affidavits. The Jurors filed affidavits to the effect, that they had not conversed with any one in relation to the case; and the bailiff of the Jury swore, that he was with these Jurors; heard all that they said; that they did not converse in relation to the case and that the prisoner was present and in hearing of what they said.

The Court refused a new trial, and defendant excepted.

Upon these several exceptions, error was assigned.

R. F. LYON; M. WILLIAMS; H. MOORE, for plaintiff in error.

Sol. Gen. LYON, for the State.

*By the Court.*—STARNES, J. delivering the opinion.

But a few of the several grounds of objection which appear

in the bill of exceptions in this case, were presented for our consideration at the hearing, by the Counsel for the plaintiff in error. These, only, we shall notice in the opinion; finding, as we do, no cause for interference with the judgment, on any of the other points.

[1.] One of the Jurors, Elisha Tucker by name, was put upon triors; and before the triors he was examined, the Counsel for the State being permitted, without objection, to examine the Juror, with reference to his opinion as to the guilt of the prisoner. To the questions put by the Counsel, he gave such answers as, without doubt, led to his being found competent by the triors.

It is now insisted, that the State's Counsel had no right to put these questions to the Juror.

It is unnecessary for us to decide, whether or not it was proper for the Solicitor General thus to examine the Juror. It was permitted, without objection or cavil. And we have repeatedly ruled, that objections on account of such matters of practice, must be made at the trial, and the decision of the Court had thereon; otherwise, we are not authorized to interfere on account of error in the proceeding.

Irregularities of practice ensue in, perhaps, every trial of importance; they ensue frequently with the concurrence of both parties, and are rightly supposed to be waived when no objection is made on account thereof.

Besides, if no exception be taken at the trial, no point made, and the opinion of the Court not invoked and not given, there has been no decision, sentence judgment or decree of a Superior Court rendered upon the point; and therefore, by the organic law of this Court, we have no right to review the proceeding.

[2.] We recognize the right of the Judge, in the Court below, to revise and correct the brief of the testimony, as it is presented to him in the record. It is his duty to see that a correct and proper statement of the evidence is presented;

and he violates his duty in a most important and vital par-- ticular, if he fail to do this.

The Court below was, therefore, right in ordering such of the testimony, as (according to his recollection) had been omitted to be inserted, and in revising and correcting the other testimony presented. It is true that the Judge may err in the discharge of this duty, and that his error cannot be corrected. But from the necessity of the case, this power of revision and correction must be reposed somewhere; and where can it be more appropriately confided, than in that officer who has been chosen by his fellow-citizens to sit in judgment, uprightly and disinterestedly, between his fellow-citizens who are litigant before him?

[3.] With the only other exception remaining to be considered, we have had some difficulty in dealing.

The affidavits presented upon the motion for a new trial, show, very clearly, that two of the Jurors, Ross and Parker, improperly behaved themselves after they were sworn—entering a grocery or retail shop as they did, and one of them (John Ross) speaking with several persons, and otherwise demeaning himself in a manner unworthy of a sworn Juror, and especially of one who was charged with an issue of life or death. And we should feel it our duty to send the case back on account of this conduct, but for the statement of the Bailiff who attended the Jury.

The Jurors, themselves, in their exculpatory affidavits, say that they were not out of the presence of the Bailiff. Parker declares that he held conversation with no one in relation to the case, and Ross makes a similar statement. The Bailiff swears, that he remained in company with these Jurors when they went into the grocery; that he heard what was said to the various persons with whom conversation was held by them; that nothing was said in relation to the case, and that the prisoner was present and in hearing during all this time.

This latter fact, when taken in connection with the other statements of the Bailiff, has satisfied our minds that no in-

jury came to the prisoner by the loose conversations of these Jurors; and on this account, we will not control the verdict. Judgment affirmed.