42341. GRAHAM v. CLARK.

Argued October 5, 1966—Decided November 30, 1966—
Rehearing denied December 19, 1966—

*Hitch, Miller, Beckmann & Simpson, Luhr G. C. Beckmann, Jr., A. Martin Kent, Robert S. Lanier,* for appellant.

*Allen & Edenfield, B. Avant Edenfield,* for appellee.

JORDAN, Judge. ■ Ground 1 of the amended motion for new trial assigns error in permitting the attending physician of plaintiff to give his opinion as to the apportionment of injuries suffered by plaintiff in the incident on March 25, 1964, out of which this action arose, in relation to a subsequent substantially similar incident on June 24, 1964. The colloquy which took place on direct examination is as follows: "Q. You, from your records, say you are aware of a second automobile wreck and the reinjuring of Mrs. Clark. Can you estimate what percentage of Mrs. Clark's disability today was caused by this first injury, what percentage was caused by the second injury? A. That would be a most difficult thing to do. I have avoided that in the past. Q. If I insisted on a question, on an answer to that, or if I had asked you this question before and you had put some thought to it, if I insisted on an answer, what would you give me? Within your medical opinion? A. I'd be willing to accept somewhat say two-thirds for the first accident and one-

third for the last accident and that's purely because the ground work was already there, and the second accident could have been much more negligible, that just compounded that that was already present. That would just be an off-the-cuff opinion. It may not be worth anything."

The defendant interposed no objection to this testimony at the time.

On cross-examination the following colloquy occurred: "Q. I believe a moment ago you said that you would attribute her condition presently on a basis of two-thirds to this accident here in Statesboro and one-third to the accident in Savannah, is that your testimony? A. I stated first that I probably couldn't separate them, but if I was forced to give an answer I would, just off the cuff, say two-thirds first accident, one-third second accident, purely on the basis that the stage was already set and in motion when the second accident occurred and it would take a much less severe blow to cause an exacerbation of her symptoms than the initial accident and that's the only basis on which I could say two-thirds and one-third and it may not be right. Q. Would this be a fair statement with reference to that evaluation, Dr. Deal, this is purely conjecture, is it not? A. Yes, just off the cuff. Q. Or Guess? A. Well, you know after you see some of these cases over the periods of years, you probably, I'd like to use guess, but I'd like to put it somewhat educated guess. Q. Again referring to your deposition, on page 14, the question asked you, 'Do you feel, sir, after the second accident, that her condition would have been improved or gotten any better or do you feel that it was at all related to the first? A. I'd be unable, you know, I've been dodging answering that because that's a mythical question. I wouldn't know how to answer that.' Q. Is that your statement then? A. That's basically what I'm saying now. Q. Then if you say two-thirds is attributable to this accident here, and one-third attributable to the accident in Savannah, it's based upon nothing concrete, that is a fair statement is it not, Dr. Deal? A. I think so. Q. And that's purely a guess, which you aren't—you aren't telling this jury that that's what it is, are you? A. No, I'm telling the jury, I just was stating that

she was already hurt, it didn't take as much to hurt her over again the second time, so two-third, one-third. I wouldn't argue. Q. But, for the collision that occurred in Savannah on June 24th, 1964, Mrs. Clark may very well not have any difficulties, isn't that true? A. You mean had she not had the second accident, she'd be through with this? Q. Yes, sir? A. Oh, I don't know, I don't believe that, I don't believe that."

After the physician had been excused as a witness and plaintiff had testified, defendant moved, out of the presence of the jury, to strike all of Dr. Deal's testimony with reference to the apportionment of injuries between the incident in Statesboro and the incident in Savannah on the basis that it was so uncertain and so much a matter of conjecture that it would not be proper evidence to submit to the jury. The trial judge overruled this motion.

Plaintiff, as appellee in this court, asserts that defendant waived any objection to the physician's testimony by failing to object during examination of the witness. Plaintiff relies upon the general rule, repeated in numerous cases before the appellate courts of this state, that a ground of a motion must show that the movant objected to the evidence at the time it was offered and must set forth the objection urged before the court at that time. See *Phillips v. State,* 108 Ga. App. 540 (133 SE2d 708); *McKee v. Hurst & Co.,* 21 Ga. App. 571 (2) (94 SE 886), and *Cochran v. Bugg,* 131 Ga. 588 (2) (62 SE 1048). Rulings of this nature are restricted in their application, however, and should not be applied to those situations involving a timely motion to strike or rule out allegedly inadmissible evidence. While "all objections to testimony . . . must be urged and insisted upon at once" (*Code* § 24-3362), the Supreme Court has interpreted this rule to mean that all objections to testimony must be urged "at one and the same time" and that by allowing evidence to be introduced without objection, a party does not lose the right to move to have the evidence excluded at any time before the case goes to the jury. *Patton v. Bank of Lafayette,* 124 Ga. 965, 974 (53 SE 664, 5 LRA (NS) 592, 4 AC 639); *Blount v. Beall,* 95 Ga. 182 (4) (22 SE 52). "A motion to rule out testimony illegally admitted even without

objection is never too late until the cause if finally submitted to the jury. If the testimony is illegal, it should not be considered by the jury, and if it is not to be considered by the jury, it should not be admitted for their consideration." *Blount v. Beall,* supra, p. 189. Also, see the discussion and collection of cases in Green, Georgia Law of Evidence, §§ 12, 14. We deem it sufficient in this case for consideration of the alleged error, as set forth in the motion for new trial, that the defendant moved to strike the evidence before the case went to the jury.

We are here dealing with the opinion testimony of an expert whose qualifications were admitted. He testified concerning his treatment of plaintiff long before the first incident, his examination and treatment of plaintiff after the alleged injuries forming the basis for the present action, and his examination and treatment of plaintiff following the second incident. With some degree of reluctance he testified that he would apportion plaintiff's injuries two-thirds to the first incident, and one-third to the second incident, and he qualified his opinion by stating it was "just off the cuff," but a "somewhat educated guess." The qualifying statements go to the weight of the testimony, not to its admissibility. *Atlanta Veterans Transportation, Inc. v. Cagle,* 106 Ga. App. 551 (2) (127 SE2d 702), and cases cited therein. As a qualified medical expert his opinion as to the extent of injuries suffered in the two incidents, based on his knowledge gained in treating the patient, to which he testified, was clearly admissible. *Code* § 38-1710.

*Hulme v. Mutual Benefit Health &c. Assn.,* 64 Ga. App. 466 (13 SE2d 689), cited by defendant, as the appellant, deals with the opinion of a physician that death may have resulted from an embolus, of the presence of which the physician admitted he did not know and which could not be proved except by an autopsy, which was not done. There the court properly held that the testimony amounted to nothing more than a mere surmise, and would not support a verdict. This is an entirely different situation from the opinion of a physician as to the relative extent of two injuries based on "before and after" examination and treatment of the patient. The case of *Pritchett v. Higgins,* 111

Ga. App. 718, 721 (143 SE2d 47), also cited by the appellant, involves the testimony of a lay witness as to the speed of a motor vehicle which carried the connotation that the witness really had no opinion as to speed. It is also noted that his testimony as to an "imagined" speed of 35 miles an hour, after first stating "about 35 or 40 miles an hour," failed, even if true, to show any violation of the applicable speed limit of 35 miles per hour. There also the court held that this evidence would not support a verdict. We do not consider the holdings in either of these cases or similar cases applicable to the present case. Ground 1 of the amended motion for new trial is without merit.

■ In Ground 2 of the amended motion for new trial defendant complains that the court erred in allowing plaintiff to testify concerning the monetary value of injuries she sustained. Plaintiff, responding to a question by counsel as to how she arrived at the sum of $45,000, to which objection was interposed and overruled, testified that the only work for which she was trained was bookkeeping, that she was unable to sit at a desk in one position for over an hour, or one hour and a half, that if something should happen to her husband she could not possibly take care of the children, that her relationship with her husband and children was impaired, and that no amount of money would compensate her for her injuries. Defendant, in asserting error before this court, relies on the line of cases which hold it to be reversible error "when a man swears damages into his own pocket." See *Central Railroad & Bkg. Co. v. Kelly,* 58 Ga. 107, 111. In the cited case plaintiff, who sought $10,000 for injuries to his hand, testified that he had been damaged in this amount. Although he did explain how he was hurt, he did not explain how he arrived at the figure of $10,000. The distinction between that case and the present case lies in the fact that there plaintiff was permitted to swear, in round numbers, that he was damaged $10,000, the exact amount sought, in other words he answered what his damages were, and not how the injuries had affected him. In the present case the witness made it quite clear that she could not, in round numbers, place any dollar value on her injuries, but she did explain how the injuries had affected her activities, and left it to the jury to determine

the dollar value of her pain and suffering. She stated, "Well, you know, I am stuck with this neck, there's no amount of money . . ." and later she said ". . . I just don't feel, I've gotten to the place I don't feel like any amount of money could pay me for it." Finally, in replying to direct question by her counsel, "One more question, this $45,000 you are asking for is the injury of March, 1964?" she answered, "Yes." This last response merely reiterates what the petition alleges, i.e., that plaintiff seeks $45,000. Her testimony as a whole emphasizes her inability to fix the monetary value of her injuries, and falls far short of misleading the jury by fixing the value, in her sworn opinion, at $45,000. Such testimony did not violate the "ultimate fact" rule which, as applied to a party testifying in his own behalf, prohibits a party from swearing "into his own pocket" the value of unliquidated damages for pain and suffering. This ground of the amended motion is without merit.

■ Ground 4 assigns error on the introduction in evidence of Carlisle mortality table and Grounds 5 thru 9 assign error on jury instructions regarding future and permanent pain and suffering, and the application of the Carlisle Mortality table. The gist of the argument advanced by defendant for these grounds is that the evidence will not support a determination of permanent pain and suffering arising from the occurrence of March 25, 1964. These grounds are without merit in view of the attending physician's testimony that "she will probably forever have exacerbations of her pain over periods of years . . ." which he qualified only by his further statement that the exacerbations would come farther apart and be of a lesser degree and severity in the years to come.

■ Defendant expressly abandoned Ground 3 of the amended motion for new trial and does not urge the general grounds of the original motion. The trial judge did not err in overruling the motion for new trial.

*Judgment affirmed. Bell, P. J., and Eberhardt, J., concur.*