A95A1253. DEPARTMENT OF TRANSPORTATION v. SHARPE et al.
(465 SE2d 695)

BLACKBURN, Judge.

This is the second appearance of this condemnation case before this Court. In *Dept. of Transp. v. Sharpe*, 213 Ga. App. 549 (445 SE2d 343) (1994), we reversed the judgment entered on the jury's verdict based upon the trial court's erroneous instruction to the jury. The case was returned for a second trial following which the jury awarded condemnees R. G. Sharpe and Dabney Sharpe, individually and as administrators of the estate of C. W. Sharpe, $850,000 for the value of the 19.289 acres of wooded land containing limestone deposits which was condemned by the Department of Transportation (DOT). The award was far in excess of the $23,750 loss set by the DOT's expert appraiser. Judgment was entered on the jury's verdict, and this appeal followed. Specifically, the DOT maintains that experts Robert Gerdhardt and Joseph Limb assigned values to the condemned property as if the eight million tons of limestone deposits had been mined when in fact, no mining had occurred. The DOT asserts that this testimony was improper.

1. The DOT made no contemporaneous objection to the testimony of the experts. Rather, it moved to strike portions of the expert's testimony at the close of evidence. Condemnees assert this method of excluding evidence is untimely and improper. The Supreme Court has previously held that by allowing evidence to be introduced without objection, a party does not necessarily waive the right to move to have the evidence excluded any time before the case goes to the jury. *Patton v. Bank of LaFayette*, 124 Ga. 965, 974 (53 SE 664) (1906).

However, only certain evidence can be excluded by a motion to strike made subsequent to its admission. *Patton*, supra, raised a similar issue regarding hearsay testimony. "[A] distinction is to be drawn between illegal testimony and secondary evidence or other evidence which is legal in itself because it is of probative value but is inadmissible until the proper foundation for its reception has been laid. Hearsay testimony has no probative force whatsoever [cit.], and its only effect is to prejudice the party against whom it is offered. Evidence of a secondary nature, the only objection to which is that it was received without the preliminary foundation for its introduction being first

laid, stands upon an altogether different footing; and if admitted without objection, it is to be treated as altogether competent." *Patton*, supra at 974; see also *Mable v. State*, 261 Ga. 379, 381 (405 SE2d 48) (1991).

The evidence at issue in this case may be analogized to the hearsay evidence addressed in *Patton*. This is not an instance of proper evidence being admitted without the necessary foundation. Rather, the DOT asserts that the condemnees offered testimony evidencing the wrong measure of damages. Thus, the DOT claims, the evidence is altogether without probative force as to the condemnees' damages and only served to prejudice the jury by giving them an improper notion of the condemned land's value. Under the facts of this case, we determine that the DOT sought to strike illegal evidence, not secondary evidence, as those terms are defined in *Patton*, and, accordingly, the DOT's motion to strike was appropriate.[1]

2. Having determined that the DOT's motion to strike properly preserved its objection, we must determine whether the trial court erred in not granting the DOT's motion. Gerdhardt, a real estate appraiser, testified that the highest and best use for the land was residential-agricultural that permits mining. He opined that the surface acreage was worth $16,000. He separately calculated the present value of the mineral deposits at $600,000 to $650,000 based upon a royalty paid upon the extraction of limestone.

DOT argues that this testimony should have been struck under

---

[1] We perceive very strong inequities and weaknesses in this rule when applied to civil as opposed to criminal cases. Cf. *Mable v. State*, supra (inadmissible evidence regarding *Miranda* violation is subject to motion to strike at any time before case is submitted to jury). We understand the rationale that inadmissible evidence should never be submitted to the jury, regardless of when an objection is lodged. However, on balance, we find the rule of permitting a motion to strike evidence previously admitted without objection harms more than helps the cause of fair dispute resolution.

First, these types of motions risk potential for great abuse as they allow objections to be made after a party has closed its evidence and dismissed its witnesses, effectively preventing that party from curing any evidentiary defect raised by the motion. The widespread use of this form of objection would negatively affect judicial economy. Witnesses could be subject to lengthy direct and cross-examinations only to have their testimony ruled inadmissible at a later time. The case at hand exemplifies one of the problems posed to judicial economy. It is quite possible that if the objection had been made during the course of the experts' testimony, additional evidence would have resolved the objection, thereby eliminating the need for the present appeal or the expense of a possible retrial. Finally, the rule permits great confusion among both judges and jurors. It is an unenviable task to rule on objections in testimony that was previously given. In that circumstance, the trial court must rely in large measure on its recollection of testimony whereas a contemporaneous objection permits the trial court to direct and limit testimony as appropriate rather than try to evaluate and analyze a memory of that testimony. Also, when evidence is stricken after its admission, jurors must face the difficult, sometimes near impossible, task of "disregarding" testimony that they have already heard.

While reluctant to do so for the reasons outlined above, we permit this form of objection as it is allowed pursuant to the present law of this state.

*Dept. of Transp. v. Benton*, 214 Ga. App. 221, 222 (447 SE2d 159) (1994). In *Benton* a condemnation award was reversed because the condemnee's expert valued undivided, unimproved land by hypothesizing how much the land would be worth if it had been subdivided for residential homes. Even though the expert subtracted the cost necessary to subdivide in determining the land's value, this Court reasoned that the evidence should have been excluded "because it values the property at a time *after* the taking." Id. at 223.

We agree with the DOT that, in this case, the trial court permitted improper testimony of the condemned land's value. However, our decision is not based on *Benton* but on other condemnation cases that directly address how to value land containing mineral or soil deposits suitable for extraction. *Williams v. Mayor &c. of Carrollton*, 195 Ga. App. 590 (394 SE2d 389) (1990) concerned how to value condemned land containing "chewacla" soil. "The *fact* that chewacla soil was present was a relevant factor to be considered in determining the overall value of the property. See generally *State Hwy. Bd. of Ga. v. Shierling*, 51 Ga. App. 935 (1, 2) (181 SE 885) (1935). However, the *separate value* of the chewacla soil would certainly not be a relevant inquiry. Land containing valuable deposits may be of greater market value than land without such deposits, but the land and the deposits constitute one subject matter and there cannot be a recovery for the land as such, and also for the deposits. *Southern R. Co. v. Miller*, 94 Ga. App. 701, 704 (1) (96 SE2d 297) (1956). . . . Thus, the only relevant inquiry was the overall value of the property, with the fact that the property contained chewacla soil being taken into account." (Punctuation omitted.) Id. at 591.

Similarly, in the present case, the only relevant inquiry was the overall value of the property on the date of taking with the presence of the limestone deposits being taken into account. Thus, while the condemnees could properly recover any enhancement to the property's value resulting from the limestone deposits, they were not entitled to recover the separate value of surface property and the mineral deposits. Accordingly, the trial court erred in allowing this testimony from Gerdhardt.

Limb, an industrial minerals real estate consultant, opined that the actual damage to condemned property was $595,606 based upon royalty income that could be generated from the mining of the limestone for an eight-year period. Based upon the same reasoning outlined in Division 1 above, the trial court erred in allowing this testimony. Similar evidence merited reversal in *Southern*, supra. The condemned land in *Southern* contained sand deposits. The improper testimony valued the sand based upon the owner's probable compensation assuming a ten-year extraction period. "[L]and and the deposits [contained therein] constitute one subject matter and there cannot

be a recovery for the land as such, and also for the [sand] deposits." *Southern,* supra at 704. Once again, in this case, testimony could be offered as to the enhanced value of the land based upon the presence of the limestone deposits; however, condemnees cannot value their land and the mineral deposits separately.

As the general award of the jury was obviously affected by the expert testimony of these witnesses, it must be reversed.

3. In light of the foregoing, it is not necessary for us to address the remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Andrews, J., concur.*

DECIDED NOVEMBER 17, 1995 —
RECONSIDERATION DENIED DECEMBER 14, 1995 —

*Michael J. Bowers, Attorney General, George P. Shingler, Senior Assistant Attorney General, John A. Draughon, Assistant Attorney General, Sell & Melton, Michelle W. Johnson,* for appellant.

*Daniel, Lawson, Tuggle & Jerles, Tom W. Daniel, William R. Jerles, Jr.,* for appellees.

