S96G0546. SHARPE et al. v. DEPARTMENT OF
TRANSPORTATION.
(476 SE2d 722)

HUNSTEIN, Justice.

The Court of Appeals held that the Department of Transportation did not waive its right to object to certain testimony by condemnees' experts when the DOT failed to make a contemporaneous objection but instead chose at the close of the evidence to make a motion to strike the testimony. *Dept. of Transp. v. Sharpe,* 219 Ga. App. 466 (465 SE2d 695) (1995). Relying on *Patton v. Bank of LaFayette,* 124 Ga. 965, 974-975 (53 SE 664) (1906), the Court of Appeals found that the challenged testimony was "illegal" evidence and thus the motion to strike was proper. We granted certiorari and now hold that because the experts' testimony was probative, not illegal, evidence, the DOT's failure to object contemporaneously thereto resulted in a waiver of its right to object.[1] Further, we henceforth disallow the use of those types of motions to strike approved in *Patton,* supra, except under the limited circumstance set forth herein.

1. The contemporaneous objection rule has long been a mainstay of Georgia trial practice. See, e.g., *Goodtitle v. Roe,* 20 Ga. 135 (4) (1856); *Burtine v. State of Ga.,* 18 Ga. 534 (1) (1855). That rule provides that

in order to preserve a point of error for the consideration of an appellate court, counsel must take exception to the alleged error at the earliest possible opportunity in the progress of the case by a proper objection made a part of the record.

*Nashville, Chattanooga &c. R. v. Ham,* 78 Ga. App. 403, 408 (50 SE2d 831) (1948). *Patton* itself acknowledges the contemporaneous objec-

---

[1] Our holding in this regard renders it unnecessary to reach the second question for which certiorari was granted, namely, whether in the absence of waiver did the DOT properly raise in its motion to strike the ground on which the Court of Appeals reversed the trial court.

tion rule as a "wholesome rule of court which requires that all of [a party's] objections must be urged at one and the same time." Id. at 974.

Our appellate courts have recognized an "extension" of the contemporaneous objection rule, whereby a party is allowed to move to strike evidence which appeared admissible at the time it was adduced but which is subsequently shown to have been inadmissible, conditioned upon the party's prompt objection as soon as the inadmissibility becomes apparent. See *Brown v. Techdata Corp.*, 238 Ga. 622, 628 (234 SE2d 787) (1977); *Chastain v. Fayette County*, 221 Ga. App. 118 (1) (470 SE2d 513) (1996). However, the only true "exception" to the contemporaneous objection rule was recognized by this Court 90 years ago in *Patton*, supra. In *Patton*, the Court held that a party is excused from making a contemporaneous objection to known errors in those limited instances where the error involves "illegal" rather than "secondary" evidence. This exception was premised on the fact that "[h]earsay testimony has no probative force whatsoever ([cit.]), and its only effect is to prejudice the party against whom it is offered." Id. at 974. *Patton* thus distinguished "illegal" hearsay evidence from "secondary" evidence, i.e., "evidence which is legal in itself because it is of probative value but is inadmissible until the proper foundation for its reception has been laid." Id. at 974. Only "illegal" evidence can be challenged by means of a *"Patton*-style" motion to strike made at any point before the case is submitted to the jury. The definition of "illegal" evidence has been expanded beyond the scope of hearsay evidence so as to include evidence inadmissible because it was obtained in violation of a criminal defendant's constitutional rights. E.g., *Mable v. State*, 261 Ga. 379, 381 (405 SE2d 48) (1991).

In the instant case, the testimony of condemnees' experts did not constitute illegal hearsay evidence and definitely did not involve matters of constitutional rights. The challenged evidence consisted of expert testimony discussing the value of the limestone deposits on condemnees' property.[2] The Court of Appeals credited the DOT's argument that the testimony, although not hearsay, should be analogized to "illegal" hearsay evidence because it reflected the wrong measure of damages. We disagree.

The rule is well established that "[a]nything that actually enhances the value [of condemned property] must be considered in

---

[2] As set forth in the Court of Appeals' opinion, one expert gave his opinion as to the present value of the mineral deposits based upon a royalty to be paid upon the extraction of limestone and the other expert opined as to the royalty income that could be generated from the mining of the limestone for an eight-year period. *Dept. of Transp. v. Sharpe*, supra, 219 Ga. App. at 467, 468.

order to meet the demands of the Constitution that the owner be paid before the taking, adequate and just compensation." *Hard v. Housing Auth. of Atlanta*, 219 Ga. 74, 80 (132 SE2d 25) (1963). Accord *Central Ga. Power Co. v. Cornwell*, 141 Ga. 643 (1) (81 SE 882) (1914). See also *Gunn v. Dept. of Transp.*, 222 Ga. App. 684 (476 SE2d 46) (1996). Accordingly, the appellate courts have recognized that evidence regarding the presence of mineral deposits in condemned property is relevant to the jury's determination of the overall value of the property. *Atlanta Terra Cotta Co. v. Ga. R. &c. Co.*, 132 Ga. 537, 545-546 (7) (64 SE 563) (1909) (clay); *Williams v. Mayor &c. of Carrollton*, 195 Ga. App. 590 (394 SE2d 389) (1990) (chewacla soil). It is equally well established that an expert is entitled to explain all the various elements considered in formulating his opinion. *Moore v. State Highway Dept.*, 221 Ga. 392, 393 (144 SE2d 747) (1965); *State Highway Dept. v. Howard*, 119 Ga. App. 298 (6) (167 SE2d 177) (1969). However, because the loss of mineral deposits on condemned property does not constitute a separate element of damages recoverable in a condemnation proceeding, testimony regarding mineral deposits must focus on the value of the land as enhanced by the mineral deposits and not simply on the value of the mineral deposits alone. *Atlanta Terra Cotta Co.*, supra, 132 Ga. at 546 (7) (no recovery both for the land as such and also for the mineral in the land); *Southern R. Co. v. Miller*, 94 Ga. App. 701, 704 (96 SE2d 297) (1956) (expert erred by testifying as to value of sand but giving no opinion as to value of property as a whole). See also 26 AmJur2d 751, § 338. Hence, evidence of the value of mineral deposits is relevant not to establish the separate value of the deposits but to establish the value of the overall property as enhanced by the deposits.

Accordingly, while the testimony of condemnees' experts regarding the limestone deposits was relevant to the jury's determination of the overall value of the property, *Atlanta Terra Cotta Co.*, supra, as well as to show the basis of the experts' opinions as to value, to enable the jury to evaluate the experts' credibility, and to assist the jury in determining the weight to be given the testimony, see generally *White v. Ga. Power Co.*, 237 Ga. 341 (3) (227 SE2d 385) (1976), overruled on other grounds, *DeKalb County v. Trustees &c. Elks*, 242 Ga. 707, 709 (251 SE2d 243) (1978), the testimony was deemed inadmissible by the Court of Appeals on the basis that condemnees improperly adduced the evidence of the mineral deposits as a separate element of damages rather than as " 'one subject matter' " together with the land. *Dept. of Transp. v. Sharpe*, supra, 219 Ga. App. at 468-469 (citing *Southern R. Co. v. Miller*, supra, 94 Ga. App. at 704 (1)). In other words, while the limestone deposit evidence itself was probative, the evidence as presented was deemed inadmissible by condemnees' failure to place the evidence into its proper context.

Because the evidence in issue was relevant and its inadmissibility was due solely to condemnees' failure to establish the proper foundation in which such evidence could be adduced, the evidence must qualify as "secondary" evidence rather than "illegal" evidence under *Patton*, supra. It therefore follows that because the DOT did not raise a contemporaneous objection, the DOT "forfeited [its] right to insist that the [testimonies] should be excluded from the evidence." Id. at 975. Accordingly, the ruling to the contrary in the Court of Appeals is reversed.

2. The evidentiary ruling in this case, albeit erroneous, does not present this Court with a matter of "great concern, gravity, and importance to the public" so as to justify the grant of the writ of certiorari. Supreme Court of Georgia Rule 40. Rather, certiorari was granted to reconsider this Court's approval of the *Patton*-style motion to strike because of the confusion and unfairness that results from use of such a motion, as exemplified by the instant appeal. Confusion is shown by the difficulty between determining when evidence is "illegal" rather than "secondary," a decision so complicated that even the members of this Court cannot agree on its resolution. Unfairness is shown by the "sandbagging" effect that results from the use of a *Patton*-style motion to strike, in that a party can sit silent while curable error is committed, then wait until it is too late for the opposing party to correct the matter before raising an objection.

*Patton* was rendered 60 years before the enactment of the Civil Practice Act with its rejection of stratagems that impede the desired goal of "just, speedy, and inexpensive" resolution of civil disputes. OCGA § 9-11-1. See OCGA § 9-11-46 (a), which abolished formal exceptions and holds sufficient those objections asserted "at the time the ruling or order of the court is made or sought." Abolishing the *Patton*-style motion to strike is consistent with the prevailing procedural rule requiring contemporaneous objection. Although *Patton* has the strength of stare decisis behind it as a reason for maintaining the viability of its exception to the contemporaneous objection rule, stare decisis is not a particularly compelling reason here given the conflict with modern trial practice and the fact that the precedent in issue does not involve statutory interpretation, compare, e.g., *Simpson v. Dickson*, 167 Ga. App. 344, 348 (306 SE2d 404) (1983), and does not implicate one of those areas where the "settled rule of law" is especially desirable, e.g., cases involving vested property rights, the security of contracts, property interests, wills and trusts, and commercial transactions in general. See *Robinson v. Colonial Discount Co.*, 106 Ga. App. 274, 276 (126 SE2d 824) (1962). Finally, abolishing the *Patton*-style motion to strike will have little impact on modern trial practice inasmuch as a review of case law since the enactment of the Civil Practice Act reveals that the motion is so rarely utilized as

to have been virtually abandoned in every area of litigation, except condemnation cases.[3]

Although *Patton* dates to 1906, this Court recognized even earlier, in 1890, that

> [i]t has never been the doctrine of any court of last resort that the law is to be a refuge and safe asylum for all the errors that creep into it. Indeed, the mind, private or official, which closes down upon all the errors it embraces, refusing to eject them when exposed, is no longer fit for the pursuit of truth. Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes.

*City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 733 (13 SE 252) (1891). The fact that this Court approved this type of motion to strike 90 years ago in *Patton* does not justify preserving in modern litigation an out-dated, "trial by ambush" procedural tactic. Accordingly, we overrule *Patton v. Bank of LaFayette* and disallow the use of a motion to strike made at any point before the jury retires as a procedural tool to object to evidence, except in those limited instances where the evidence was inadmissible because it was obtained in violation of a criminal defendant's constitutional rights, *Mable v. State*, supra, 261 Ga. at 381, in that continued use of the *Patton*-style motion to strike may serve the beneficial purpose of providing an additional means of safeguarding those rights.

3. The holding of the Court of Appeals is reversed and this case is remanded to that court for consideration of the DOT's remaining enumerations of error.

*Judgment reversed and remanded. All the Justices concur, except Carley and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

I neither agree that the unanimous decision in *Patton v. Bank of LaFayette*, 124 Ga. 965, 974 (7) (53 SE 664) (1906) should be overruled nor that the challenged testimony of the Sharpes' two experts was probative, secondary evidence. For these reasons, I respectfully dissent to the majority's reversal of the judgment of the Court of Appeals.

The doctrine of "stare decisis" has never been limited to certain

---

[3] We note that condemnation cases represent the vast majority of those reported appellate opinions rendered since the enactment of the CPA which address the use of the *Patton*-style motion to strike, even though there are other areas of the law that equal or exceed condemnation law in the complexity of the evidentiary rules and sophistication of the testimony adduced during litigation.

areas of law. This Court always has been and should continue to be reluctant to overrule its prior unanimous decisions. *Slowik v. Knorr*, 222 Ga. 669, 671 (151 SE2d 726) (1966). Not long ago, in 1991, this Court reaffirmed *Patton v. Bank of LaFayette*, supra, and adhered to the long-standing distinction recognized in Georgia between a motion to strike "illegal" evidence and a motion to strike "secondary" evidence: " 'A motion to rule out testimony *illegally* admitted even without objection is never too late until the cause is finally submitted to the jury.' [Cit.]" (Emphasis in original.) *Mable v. State*, 261 Ga. 379, 381 (1) (405 SE2d 48) (1991). Although Mable was a criminal case, the rationale underlying the distinction applies equally to civil cases and, indeed, was originally set forth in civil cases. See, e.g., *Patton v. Bank of LaFayette*, supra; *Blount v. Beall*, 95 Ga. 182, 189 (4) (22 SE 52) (1894); *Anderson v. Suggs*, 42 Ga. 265 (1871); *J. Day & Co. v. Crawford*, 13 Ga. 508, 511 (2) (1853). That rationale is that, unlike "secondary" evidence, "illegal" evidence "should not be considered by the jury, and if it is not to be considered by the jury, it should not be admitted for their consideration." *Blount v. Beall*, supra at 189 (4). See also *Henderson v. State*, 162 Ga. App. 320, 328 (292 SE2d 77) (1982) (On Motion For Rehearing); *Graham v. Clark*, 114 Ga. App. 825, 829 (1) (152 SE2d 789) (1966). A motion to strike "illegal" testimony is especially appropriate in condemnation cases and other cases where complex evidentiary rules and testimony are common. See *Dunaway v. Columbia County*, 213 Ga. App. 840 (2) (447 SE2d 31) (1994); *Dept. of Transp. v. Whitehead*, 169 Ga. App. 226, 230 (3) (312 SE2d 344) (1983).

In this case, the Sharpes' experts assigned a separate value to limestone deposits on the property taken, based on a projected royalty to be paid upon extraction thereof. As a result, they testified to a much higher value of the property than did DOT's expert. DOT made no contemporaneous objection to the testimony of the Sharpes' experts, but moved to strike that testimony at the close of the evidence.

A motion to strike illegal testimony is timely if made before the *final* submission of the case to the jury. *Mable v. State*, supra at 381 (1); *McCalman v. State*, 121 Ga. 491, 496-497 (5) (49 SE 609) (1904); *Blount v. Beall*, supra at 189 (4); *Smith v. State*, 123 Ga. App. 269, 271 (1) (b) (180 SE2d 556) (1971); *Rushin v. State*, 63 Ga. App. 646, 647 (1) (11 SE2d 844) (1940). Compare *Brown v. Techdata Corp.*, 238 Ga. 622, 628 (234 SE2d 787) (1977). Thus, if the testimony of the Sharpes' experts was "illegal" rather than "secondary" evidence, then DOT's motion to strike was timely, as it was made at the close of evidence and prior to either the closing arguments or the jury charge. See *McCalman v. State*, supra; *Dept. of Transp. v. Whitehead*, supra; *Rushin v. State*, supra. "Secondary" evidence is that which has proba-

tive value and is legal in itself, but which is inadmissible until the proper foundation has been laid. *Mable v. State*, supra; *Patton v. Bank of LaFayette*, supra. "Illegal" evidence, on the other hand, either has no probative value, such as hearsay, or its admission is error of constitutional dimension. *Mable v. State*, supra; *Patton v. Bank of LaFayette*, supra.

DOT has never asserted that the testimony of the Sharpes' experts was probative "secondary" evidence which was admitted without the necessary foundation. Rather, DOT urged that the opinions of the Sharpes' experts improperly utilized the present value of the limestone deposits and, as the Court of Appeals pointed out, this is an assertion that the Sharpes' experts offered testimony "evidencing the wrong measure of damages" and "altogether without probative force." *Dept. of Transp. v. Sharpe*, 219 Ga. App. 466, 467 (1) (465 SE2d 695) (1995). Indeed, if evidence is offered to prove value, based solely on an incorrect measure of damages, then it has no probative value and is, therefore, "illegal" evidence. *Ga. Power Co. v. Cannon*, 120 Ga. App. 721, 723 (2) (172 SE2d 142) (1969); *State Hwy. Dept. v. Mann*, 110 Ga. App. 390, 392 (2) (138 SE2d 610) (1964).

As the Court of Appeals and the cases cited by the majority indicate, evidence of the *presence* of mineral deposits and their effect on the overall value of the property is admissible, but evidence of their separate *value* is never admissible, in whatever context. Contrary to the majority opinion, the *value* of the mineral deposits is never relevant in establishing the overall value of the property. Only the *presence* of the mineral deposits is so relevant. *Atlanta Terra Cotta Co. v. Ga. R. &c. Co.*, 132 Ga. 537, 545-546 (7) (64 SE 563) (1909); *Dept. of Transp. v. Sharpe*, supra at 468 (2); *Williams v. Mayor &c. of Carrollton*, 195 Ga. App. 590, 591 (2) (394 SE2d 389) (1990); *Southern R. Co. v. Miller*, 94 Ga. App. 701, 704 (1) (96 SE2d 297) (1956).

Accordingly, in my opinion, the evidence of the separate value of the mineral deposits was non-probative, "illegal" evidence and, thus, the Court of Appeals correctly held that DOT's motion to strike was a timely and appropriate means to invoke a ruling on the admissibility of the testimony of the Sharpes' experts.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED OCTOBER 7, 1996 —
RECONSIDERATION DENIED NOVEMBER 8, 1996.

*Daniel, Lawson, Tuggle & Jerles, Tom W. Daniel, William R. Jerles, Jr.*, for appellants.

*Michael J. Bowers, Attorney General, Cathy A. Cox-Brakefield, Assistant Attorney General, Sell & Melton, John A. Draughon,*

*Michelle W. Johnson,* for appellee.