*Patrick D. Deering*, for appellees.

A97A1268. WILMER et al. v. FULTON COUNTY SCHOOL DISTRICT.
(487 SE2d 709)

ELDRIDGE, Judge.

The Fulton County School District ("School District") condemned 14.998 ("15") acres of land owned by J. Grant Wilmer, Jr., Catherine W. de Ladoucette, Knox Randolph Wilmer, and Charles Wilmer (the "Wilmers") as of November 3, 1994 when the award of a special master was entered by consent order.

The Wilmers filed a notice of appeal and except to the award on October 28, 1994.

The Wilmers and other members of their family owned a tract of land containing 176 acres, out of which the 15 condemned acres were taken. The real estate appraisal witnesses for the condemnor and the condemnees considered the highest and best use of the 15 acre parcel as a part of the larger 176 acre tract of land.

Pursuant to a separate consent order filed July 25, 1996, the parties agreed that *the only issue to be decided by the jury was the value of the 15 acre parcel. All claims of consequential damages to the remaining larger property were voluntarily dismissed.*

At trial of the damages, all of the School District appraisers testified that they did not perform an appraisal of the 15 acres condemned, but they based their appraisal solely upon the valuation of the larger parcels of either 98 acres or 126 acres that were part of the 176 acre tract; they then applied a pro rata average value of the larger parcel to the 15 acre tract that was condemned.

Mr. Dennis Carr, a School District appraiser, testified that he considered the 15 acre condemned parcel as part of the 176 acres. He

used a sales comparison approach to analyze the sales of similar properties; however, he primarily looked for comparables to the 176 acre tract, which were large tracts of acreage. Using 126 acres of land that lay outside the flood plain, Mr. Carr reached an opinion as to the fair market value of such large tract of acreage and then he applied the exact per acre price of the larger tract to calculate the fair market value of the 15 acre tract condemned. Mr. Carr admitted that smaller parcels of land tend to sell for more per acre than larger parcels; notwithstanding this, he distinguished the price per acre for the 15 acre condemned parcel with the price per acre for the larger 126 acre parcel. Mr. Carr testified that "pro rata average is the way to do it these days." Mr. Carr testified that he valued the 15 acre condemned parcel as part of the whole tract rather than as a separate free standing 15 acre parcel. Mr. Carr admitted that he used the "pro rata average valuation method" to make his appraisal.

Mr. David Childers, the other real estate appraiser for the School District, also appraised the entire tract of 176 acres as one economic unit of which the 15 acre parcel was a part. Mr. Childers reached the opinion that 98.3 acres of the property was suitable for apartment development, and he searched for sales that were similar in size to the 98.3 acres. The sales that Mr. Childers found comparable were for smaller acreage than 98 acres; he reduced the value per acre for the larger tract. His downward adjustment was 1.7 percent. He testified that a discount of as much as 11 percent could also be justified on the same reasoning. Although Mr. Childers admitted in testimony that smaller tracts of land sell for more per acre than large tracts of acreage, he applied the price per acre for the entire 98.3 acres that he appraised to the smaller 15 acre parcel condemned. Mr. Childers justified his actions by stating that he did not consider sales that would be comparable in size to the 15 acre parcel, "because what we are concerned with is a tract that is a total of 176 acres. Smaller land tracts typically sell for more per acre. That's a typical pattern, so to do a proper appraisal of 176 acres you want to go find large land tracts that have sold."

Since neither Mr. Carr nor Mr. Childers had done an appraisal of the 15 acre tract condemned, but instead used a pro rata method of appraisal of the entire tract, the condemnees moved to strike their opinions of value as an illegal method of evaluation.

The School District waived by not objecting to the motion to strike the experts' valuation testimony; instead the School District sought to bolster the experts' opinion testimony regarding the appraisal method used. The trial court denied the motion to strike.

In response to the pro rata average evaluations of Mr. Carr and Mr. Childers, the condemnees submitted their written request to charge number 26. The trial court refused to give charge number 26

and condemnees timely excepted to such failure.

Some 53 acres of the larger tract fell within the 100 year flood plain, 24.7 acres was road frontage, and the Big Creek formed one boundary, requiring an undisturbed buffer zone along the creek. The remaining 96 acres have extremes in topography, i.e., high hills and deep valleys in some areas of this tract which would require extensive grading. This difference in acreage prevents a unitary evaluation approach from being proper.

Mr. James Pritchett and Mr. William Stripling were real estate appraisers who testified for the condemnees. Each appraiser gave his opinion as to the fair market value for the 15 acres condemned. Each stated that in his opinion the highest and best use of the 15 acres as being in conjunction with the larger tract.

The jury returned a verdict on September 11, 1996 which followed the testimony of the School District's experts' opinion of fair market value. Final judgment was entered on September 13, 1996. The notice of appeal was filed October 11, 1996. *Held*:

1. Appellants' first enumeration of error is that the trial court erred in failing to exclude the opinion testimony of David Childers and Dennis Carr.

The evidence showed that there were 53 acres of flood plain, 24.7 acres minimum of road frontage, and that 96 acres have some areas with high hills and deep valleys which would require extensive grading. Thus, a pro rata averaging of the fair market value to the 15 acres condemned from the larger tract would not be appropriate to reflect actual fair market value of such condemned land as a proper method of appraisal to obtain the fair market value of the usable 15 acres for a school site carved out from the whole acreage, even when the 96 acres are treated as a unit, because there remain the extremes in topography in such untaken portion of the 96 acres that requires extensive grading for development.

"A pro rata method of ascertaining the value of a partial taking is not necessarily proper because the value of the part taken is not dependent on the size of the whole. If, for example, the 15-acre strip was taken from 105 acres (1/7 of the whole) rather than from 75 acres (1/5 of the whole), the pro rata method could result in a lower value simply because of the size of the whole. There was evidence that pro rata value would be greater for smaller tracts of land. The county even points out . . . that the smaller tracts sell for more money per acre than larger tracts. In other words, selling 15 acres would not necessarily be at the same per-acre price as selling 75 acres. Yet it is only the 15 acres that is being 'sold' through condemnation." *Bland v. Bulloch County*, 205 Ga. App. 317, 319 (2) (422 SE2d 223) (1992).

"In addition, the pro rata method does not accommodate variations in the value of different parts of a tract; a frontage strip may

have more value than a back strip, or a pond may have a different value than a hill on the same tract. The pro rata method averages the value of whatever the condemnee happens to own, rather [than] measuring the value of the taken portion as it is, with its unique characteristics and particular setting. Even if the whole tract is constant and has no varying features upon it, the fair market value of the whole if it were sold (wholesale) may be less than the fair market value of a number of equal pieces sold individually to separate buyers (retail)." Id.

"The *value* of the part taken is not automatically measured by the *size* of the parcel from which it is taken, although the value of the part taken may be derived in part by the *nature* of the land around it because the setting affects the highest and best use of the taken property." Id.

"We find no authority in Georgia for the proposition that the value of the land taken is a pro rata value of the whole from which it is taken." Id.; see also *Chastain v. Fayette County*, 221 Ga. App. 118, 119 (1) (470 SE2d 513) (1996); *Dunaway v. Columbia County*, 213 Ga. App. 840, 841-843 (3) (447 SE2d 31) (1994).

"An expert opinion valuing the part taken by applying the average per acre value of the entire tract has given a reason for the value opinion that is entirely speculative or conjectural in the absence of an evidentiary foundation for such a conclusion." *Chastain v. Fayette County*, supra at 119-120. "This valuation [pro rata] is illegal, and appellant did not waive his objections to this illegal and unconstitutional evidence by allowing one expert to state his answer to the question. This evidence was prejudicial because it deprived the condemnee of just and adequate compensation for the value of the property taken at the time of the taking." *Dunaway v. Columbia County*, supra at 843; see *Dept. of Transp. v. Gunnels*, 255 Ga. 495, 496-497 (340 SE2d 12) (1986). The jury is to make its award on the property taken based upon "the market value of the property actually taken." *Reed v. City of Atlanta*, 136 Ga. App. 193, 195 (5) (220 SE2d 492) (1975); see also *Bland v. Bulloch County*, supra at 320. Thus, the expert opinion testimony about which appellant complains was improper, inadmissible, and caused a taking without "just and adequate compensation."

In the case sub judice, the appellants made no objections to the illegal expert opinions as to value, but at the close of all the evidence made a motion to strike such illegal opinion evidence, which the trial court denied; the trial court allowed additional testimony by such expert witnesses to justify their use of pro rata average acreage valuation. However, this case involves illegal opinion testimony which unconstitutionally denied just and adequate compensation. As such, the issue is not waived, and the case before us is distinguishable from

*Sharpe v. Dept. of Transp.*, 267 Ga. 267 (476 SE2d 722) (1996).

The case sub judice was tried to verdict on September 11, 1996, and *Sharpe* was not decided until October 7, 1996. In *Sharpe*, the Supreme Court overruled cases permitting the motion to strike, *except* in criminal cases where there has been an unconstitutional obtaining of evidence, and disallowed use of such a motion. Therefore, appellants' claim of error may be reached because under *Sharpe*: such disallowance is prospective only, allowing a motion to strike (1) in all pending appeals, although no party has a vested right in any procedure; (2) appellants suffered an unconstitutional taking and deprivation of property without just and adequate compensation, because the experts' opinion as to value was illegal under the facts sub judice; or (3) this Court will treat such motion to strike, procedurally, as a timely objection which would preserve the issue, thereby, avoiding the "unconstitutional deprivation" issue and allow this Court to find that the trial court committed harmful error and to reverse.

2. For the reasons set forth in Division 1, the trial court erred in failing to give the appellants' charge number 26. Appellants complied fully with OCGA § 9-10-5 and excepted timely under OCGA § 5-5-24 (a). Failure to give this charge, which was a complete and accurate statement of the law, is reversible error. *Foster v. Ramsey*, 102 Ga. App. 523 (116 SE2d 617) (1960). Under the facts and circumstances of this case, the failure to give such charge was harmful error requiring reversal and a new trial.

*Judgment reversed. Birdsong, P. J., concurs. Ruffin, J., concurs in judgment only.*

DECIDED JUNE 18, 1997 — Before Judge Long.

*Pursley, Howell, Lowery & Meeks, Charles N. Pursley, Jr.*, for appellants.

*Sutherland, Asbill & Brennan, Judith A. O'Brien, Dulaney L. O'Roark III, Cecil F. Whitaker III*, for appellee.